FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 11:04 am, Aug 07, 2017*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

EDGAR QUINTANILLA,

    Plaintiff,

v.

HOMER BRYSON; ROBERT TOOLE; OTIS STANTON; WARDEN DOUG WILLIAMS; ERIC SMOKES; LT. DERIC GODFREY; and MRS. WATKINS,

    Defendants.

CIVIL ACTION NO.: 6:17-cv-4

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Smith State Prison in Glennville, Georgia, filed this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. (Doc. 1.) For the reasons set forth below, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint, **DISMISS AS MOOT** all pending Motions, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## PLAINTIFF'S ALLEGATIONS[1]

On March 23, 2016, while Plaintiff was still housed at Wheeler Correctional Facility in Alamo, Georgia, a fight broke out "in plaintiff's housing dormitory between Blacks and Hispanics involving many prisoners[.]" (Doc. 1, pp. 2–3.) Plaintiff claims that "although [he] is Mexican, he did not participate in the fight." (Id. at p. 3.) Nevertheless, Plaintiff was placed in segregation and informed that he would be transferred. (Id.)

---

[1] The below-recited facts are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

On March 25, 2016, Plaintiff was transferred to Smith State Prison and placed in the Tier II Segregation Housing Unit upon arrival. (Id.) Plaintiff contends that Defendants Smokes, Godfrey, and Watkins failed to conduct an initial Tier II administrative segregation placement hearing. (Id. at p. 4.) Instead, on April 4, 2016, Defendant Smokes gave Plaintiff a Tier II Program Assignment Memo and an Assignment Appeal Form. (Id. at p. 3.) Both forms stated that Plaintiff was assigned to Tier II for "Participation in a Disturbance/Disruptive Event@ Wheeler Correctional Facility." (Id.; Doc. 1-2, p. 1.) Plaintiff appealed the placement, contending that he did not meet the prison's criteria for placement in Tier II. (Doc. 1, p. 4.) Defendant Stanton denied his appeal on April 12, 2016. (Id.; Doc. 1-2, p. 1.)

Plaintiff further contends that Defendants never conducted a 90-day review hearing for his placement in Tier II. (Doc. 1, p. 8.) However, in his Supplemental Complaint, Plaintiff avers that on December 28, 2016, and March 16, 2017, Defendant Smokes met with Plaintiff and informed him that he would remain in Phase Three of the Tier II Program. (Doc. 14-1, pp. 2–3.) During the March meeting, Defendant Smokes also provided Plaintiff with a Tier II Program Assignment 90-day Review Assignment Appeal Form. (Id. at p. 3.) Plaintiff again filed an appeal, which Defendant Williams denied.

Finally, Plaintiff alleges that conditions in Tier II are significantly different from those in general population. Among other things, Plaintiff claims that cells in Tier II are stripped of any furniture, inmates are not afforded any out-of-cell recreation time, food portions are smaller and not as nutritious, visitation and phone times are drastically limited, and inmates have restricted access to educational, religious, and vocational opportunities. (Id. at pp. 5–6, 8–9.)

**STANDARD OF REVIEW**

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

I.  **Claims Against Homer Bryson**

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[2] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Empl't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff seeks to hold Defendant Bryson liable based solely on his position as the former Commissioner of the Georgia Department of Corrections. Plaintiff only mentions Defendant Bryson in the context of being "legally responsible for the overall operation of the Department and each institution under its jurisdiction." (Doc. 1, p. 2.) He alleges no other facts to indicate whether Bryson was personally involved in the violation of Plaintiff's constitutional rights or that the alleged violations of his rights were the result of a policy Defendant Bryson enacted. Thus, the Court should **DISMISS** Plaintiff's claims against Defendant Bryson in their entirety.

---

[2] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

**II.    Due Process Claims**

    **A.    Procedural Due Process**

A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). The Eleventh Circuit Court of Appeals has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[ ]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In his Complaint, Plaintiff details various instances in which conditions in Tier II vary significantly from those in general population. He asserts that: his cell is completely unfurnished; food portions are smaller and less nutritious; he has severely limited out-of-cell recreation time; only one two-hour non-contact visit each month is permitted; he has limited phone use; he has no access to his personal property; and he has limited access to a variety of other prison resources, including, *inter alia*, the prison library, the commissary, and educational, religious, and vocational opportunities. (Doc. 1, pp. 4–5, 8–9.) Thus, at this stage of the litigation, Plaintiff alleges sufficient facts to support his claim that the conditions in Tier II segregation impose the type of atypical and significant hardship to trigger a state-created liberty

interest. See Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (finding that, while one adverse condition standing alone may not be sufficient to create a liberty interest, the aggregation of conditions in solitary confinement may impose an atypical and significant hardship); Bass v. Perrin, 170 F.3d 1312 (protected liberty interest found in yard time where close management inmates could be deprived of all outdoor exercise time); Wallace v. Hamrick, 229 F. App'x 827 (11th Cir. 2007) (liberty interest found where plaintiff was in administrative segregation for 28 days with no hot water, no ventilation, and no opportunity for exercise while awaiting a hearing on his disciplinary violations).

Nevertheless, while Plaintiff plausibly alleges that he suffered a deprivation of liberty, he has not plausibly alleged that he received inadequate process. With regard to prisoners in administrative segregation, the Eleventh Circuit has noted that "procedural requirements set out in the regulation are not themselves constitutional mandates." Magluta v. Samples, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004). Nevertheless:

> [A]n informal, nonadversary evidentiary review [is] sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.

Hewitt v. Helms, 459 U.S. 460, 476 (1983), *abrogated on other grounds by* Sandin, 459 U.S. 460; see also Wilkinson 545 U.S. at 229 ("Although Sandin abrogated Greenholtz's and Hewitt's methodology for establishing the liberty interest, these cases remain instructive for their discussion of the appropriate level of procedural safeguards."). Additionally, the Eleventh Circuit has held that prisoners retained in administrative segregation must receive "some sort of

periodic review of the confinement[.]" Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 493 (11th Cir. 2009) (citing Sheley v. Dugger, 833 F.2d 1420, 1426 (11th Cir. 1987)).

Plaintiff avers that, while no initial placement hearing was conducted, he did receive an assignment memo notifying him why he was placed in Tier II and an application to appeal that assignment. (Doc. 1, p. 3.) "[E]ven if a prisoner is [ ] deprived of his liberty, thus requiring due process, it is well established that 'the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.'" Baker v. Rexroad, 159 F. App'x 61, 63 (11th Cir. 2005) (citing McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc)). Furthermore, Plaintiff acknowledges that Defendant Smokes conducted at least two separate reviews of Plaintiff's assignment to Tier II. (Doc. 14-1, pp. 2–3.)

Thus, Plaintiff fails to allege sufficient facts to support his claim that Defendants violated his procedural due process rights. The Court should, therefore, **DISMISS** Plaintiff's procedural due process claims.

### B. Substantive Due Process

The substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights[.]" Washington v. Glucksberg, 521 U.S. 702, 718–19 (1997) (internal citations omitted). If Plaintiff has a fundamental right, then the government may not infringe on that right unless it proves that the limitation is "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

The United States Supreme Court has specified these fundamental rights throughout a long line of cases. See Glucksberg, 521 U.S. at 720 (collecting cases). However, any

substantive due process analysis "must begin with a careful description of the asserted right," because the "doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." Reno, 507 U.S. at 302 (internal quotation and citations omitted). Furthermore, in determining what a fundamental right is, "the relevant question is not whether the asserted interest is consistent with this Court's substantive-due-process line of cases, but whether it is supported by this Nation's history and practice." Kerry v. Din, ___ U.S. ___, 135 S. Ct. 2128, 2135 (June 15, 2015) (internal quotations and citations omitted). Specifically, fundamental liberty rights must be so "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Glucksberg, 521 U.S. at 720–21 (internal quotations and citations omitted).

Here, Plaintiff claims that he has a fundamental right to be free from administrative segregation from the prison's general population. This right is not already enumerated within the Supreme Court's "substantive-due-process line of cases." Accordingly, the Court must determine whether there is a "deeply rooted" history and practice to be free of segregation. The Supreme Court has repeatedly found that "lawfully incarcerated persons retain only a narrow range of protected liberty interests." Hewitt, 459 U.S. at 467; see also Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). Furthermore, the Supreme Court's decisions "have consistently refused to recognize more than the most basic liberty interests in prisoners." Id. These interests do not include freedom from more adverse conditions of confinement.

Meachum, 427 U.S. at 224–25. Thus, there is no "objectively, deeply rooted" history and practice in this Nation to be free from segregation or even a segregation with more adverse conditions.

Accordingly, the Court should **DISMISS** Plaintiff's substantive due process claims.

### III. Eighth Amendment Claims

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347.

Even accepting Plaintiff's assertions that Defendants arbitrarily placed him in administrative confinement, conditions are significantly different from the general prison population, and hygiene and sanitation of the segregation cells are poor, Plaintiff fails to plausibly state an Eighth Amendment claim. The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley, 833 F.2d at 1428–29; see also Gholston v. Humphrey, No. 5:12-CV-97-MTT-MSH, 2014 WL 4976248, at *3 (M.D. Ga. Oct. 3, 2014) (dismissing prisoner's claims that his transfer to SMU with more restrictive conditions without a "legitimate penological

justification" amounts to an Eighth Amendment violation); Anthony v. Brown, No. CV 113-058, 2013 WL 3778360, at *2 (S.D. Ga. July 17, 2013) (dismissing on frivolity review Eighth Amendment claims based on conditions of confinement in crisis stabilization unit). As detailed above, an Eighth Amendment violation requires the prisoner to allege that he is deprived of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 349. Plaintiff does not plausibly allege that the conditions of his confinement in administrative segregation fall below this standard.

Consequently, the Court should **DISMISS** Plaintiff's Eighth Amendment conditions of confinement claims based upon his placement in administrative confinement.

## IV.    Claims Pursuant to 18 U.S.C. § 2340

Plaintiff also attempts to bring a claim under 18 U.S.C. § 2340 in his Complaint. (Doc. 1, p. 9.) However, "the plain language of the statute . . . assigns *criminal* liability to persons who commit or conspire to commit torture 'outside the United States.'" Felder v. Howerton, 240 F. App'x 404, 406 (11th Cir. 2007) (emphasis in original); 18 U.S.C. § 2340A. Plaintiff, an inmate at a Georgia state prison, has no authority to prosecute Defendants pursuant to Section 2340 for criminal liability.

The Court should **DISMISS** any claims Plaintiff attempts to bring pursuant to 18 U.S.C. § 2340.

## V.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[3] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

---

[3] A certificate of appealability is not required in this Section 1983 action.

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint, **DISMISS AS MOOT** all pending Motions, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of August, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA